IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUI GLOBAL PRODUCTS, LTD. | § | |
| D/B/A GWEE | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 4:20-cv-02652 |
| | § | |
| APPLE INC. | § | |
| | § | |
|    Defendant. | § | Jury Trial Requested |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff GUI Global Products, Ltd. d/b/a Gwee ("Gwee" or "Plaintiff") hereby submits this Complaint for patent infringement against Defendant Apple, Inc. ("Apple" or "Defendant") and states as follows:

## INTRODUCTION

1.     This is a patent infringement case in which Gwee seeks compensation for Apple's infringement of Gwee's U.S. Patent Nos. 10,589,320; 10,562,077; 10,259,021 and 10,259,020 (collectively the "patents-in-suit").

2.     Gwee and the Gwee® line of touchscreen, earbuds, optical microfiber cleaning products, exercise devices, and medical products are at least primarily the brainchild of inventor Walter G. Mayfield of Houston, Texas. Mr. Mayfield is the manager of GUI Global Management, LLC, which is the Managing General Partner of GUI Global Products, Ltd.

3.     After many weekends spent in his garage and kitchen developing prototypes, Mr. Mayfield decided that a business could be created from some of his innovative products. He then explored the commercialization of a new line of cleaning and switching products for touch screen devices and earbuds including with a magnetic cord manager that offered convenience, portability

and performance. With the addition of entrepreneur and former business owner, Dan Valdez, Gwee was founded.  Mr. Valdez served as President of Gwee and co-inventor on the patents-in-suit. Since its founding, Gwee has developed an even more robust portfolio of innovative products including an exercise device through its subsidiary GweeGym, LLC and a patented liquid indicating medical bandage through its subsidiary Dry See, Inc. Brand names of some of Gwee's products, including through its subsidiaries, include Sport Guppy™, Gwee Button™, Gwee Keyring™, Gwee Leaf™, Gwee Racer™, Gwee Racercase™, Gwee Budz™, Gwee Button Dock™, Gwee Gym™, and Dry See®.

4.      Mr. Mayfield and Mr. Valdez combined their inventive efforts to create and refine a portfolio of Gwee products, continued to build the company, and began to implement the go-to market strategy. With the hard work of Mr. Mayfield, Mr. Valdez and others, Gwee affirmed its place in the market.

5.      Mr. Mayfield and Mr. Valdez have been not only entrepreneurs and successful businessmen, but also successful inventors.  Mr. Mayfield is a named inventor on fifteen United States patents, including ten patents in which Mr. Valdez and Mr. Mayfield are listed as co-inventors.  These ten patents include the four patents-in-suit.

6.      The Apple products that infringe the patents-in-suit are the various iterations of AirPods products (*e.g.*, AirPods, AirPods (2nd Gen), AirPods Pro, and Powerbeats Pro) (collectively the "Apple Infringing Products").



AirPods          AirPods (2nd Gen)        Airpods Pro          Powerbeats Pro

## THE PATENTS-IN-SUIT

7.      Gwee is the owner of all right, title and interest in the patents-in-suit, including the right to sue for past, present and future infringement thereof and to collect damages for any such past, present or future infringement.  The inventions disclosed and claimed in the patents-in-suit provide numerous benefits over any prior existing systems comprising magnetic portable switching devices.

8.      The matters described and claimed by U.S. Patent No. 10,589,320 generally include systems comprising a portable switching device selectively and magnetically coupled to a portable electronic device; wherein the electronic device comprises a circuit responsive to the switching device; the electronic device comprises at least one of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, and raised shapes, which are  configured to correspond to complementary surface elements on the switching device; wherein the portable switching device is configured to activate, deactivate, or send into hibernation the portable electronic device; wherein the electronic device plays or pauses a remote device; wherein the switching device includes a lid and hinge; wherein the lid is recessed to configure to the electronic device; and wherein the case of the switching device, including its hinged lid, protects the electronic device. A more specific description of the matters claimed by this patent is detailed below.

9.      The matters described and claimed by U.S. Patent No. 10,562,077 generally include systems comprising a portable switching device selectively and magnetically coupled to a portable electronic device; wherein the electronic device comprises a circuit responsive to the switching device; the electronic device comprises at least one of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps and raised shapes, which are configured to correspond to complementary surface elements on the switching device; wherein the portable switching device

3

is configured to activate, deactivate, or send into hibernation the portable electronic device; wherein the electronic device plays, pauses and/or controls the volume of a remote device; wherein the switching device includes a lid and hinge; wherein the lid is recessed to configure to the electronic device; and wherein the case of the switching device, including its hinged lid, protects the electronic device.  A more specific description of the matters claimed by this patent is detailed below.

10.     The matters described and claimed by U.S. Patent No. 10,259,021 generally include systems comprising a portable switching device magnetically and selectively coupled to a portable electronic device; wherein the electronic device comprises an electronic circuit that is responsive to the switching device; the electronic device comprises at least one of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, and raised shapes, which are configured to correspond to complementary surface elements on the switching device; wherein the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and wherein the case of the switching device functions protects the electronic device.  A more specific description of the matters claimed by this patent is detailed below.

11.     The matters described and claimed by U.S. Patent No. 10,259,020 generally include systems comprising a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force from a first magnet disposed within the switching device; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; the electronic device comprises at least one of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps and raised shapes which are configured to correspond to complementary surface elements on the switching device;

4

the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and wherein the electronic device protects the switching device. A more specific description of the matters claimed by this patent is detailed below.

## THE PARTIES

12.     Gwee is a Texas limited partnership having its place of business at 1819 St. James Place in Houston, Texas.

13.     Apple is a California corporation having a place of business in Cupertino, California, and having regular and established places of business in Houston, namely at the Apple Stores in the Houston Galleria, Memorial City Mall and Highland Village shopping center. Apple may be served with process through its registered agent for service in Texas: CT Corporation System, 1999 Bryant Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq*.

15.     This Court has personal jurisdiction over Apple, including because it has committed acts within this State giving rise to this action and which have established minimum contacts with this forum such that the exercise of jurisdiction over Apple, including to the fullest extent of the Texas Long Arm Statute, would not offend traditional notions of fair play and substantial justice. Without limitation, Gwee's claims of infringement, including as set forth herein, arise in part out of Apple's infringing uses, sales and offers for sale of the Apple Infringing Products occurring in the State of Texas.

16.     Venue is proper in this District, including because Apple has regular and established places of business in Houston, Texas, namely its Apple Stores in the Houston Galleria, Memorial City Mall and Highland Village shopping center, including where the Apple Infringing Products are at least sold and offered for sale.  Apple's acts of direct infringement include making, using, selling, offering for sale and importing the Apple Infringing Products, with at least some of such use and sales efforts by Apple occurring in Houston.

## COUNT I – INFRINGMENT OF U.S. PATENT NO. 10,589,320

17.     The application for U.S. Patent No. 10,589,320 (the "'320 patent") was filed on November 27, 2019 .  The patent issued on March 17, 2020.  The '320 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

18.     Claim 1 of the '320 patent covers a system comprising "a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; a first magnet is fully disposed within the electronic device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; wherein the second case is decoupled from the first case by overcoming magnetic force the portable switching device is configured to activate, deactivate, or send into hibernation the portable electronic device; the electronic device plays or pauses a remote device; the switching device includes a lid and hinge attaching the lid to the switching device; the lid is

recessed to configure to the electronic device; and when coupled, the first case functions to protect the second case."

19.     The Apple Infringing Products comprise a portable switching device coupled to a portable electronic device, for example, the case of the AirPods, AirPods (2nd Gen), AirPods Pro (collectively "AirPods") and the Powerbeats case function as a portable switching device and the AirPod earbud and the Powerbeats earbud are portable electronic devices.  Said cases and earbuds are coupled to each other, respectively, including at least magnetically.  For example, when Airpods earbuds and Powerbeats earbuds are placed into the Airpods case and Powerbeats case, respectively, they securely snap into place magnetically.  Further, if an Airpods case or Powerbeats case is opened and turned upside down, the Airpods earbuds and Powerbeats earbuds are held into place magnetically and will not fall from the case.  For example:

 ,  , and 

20.     On information and belief, such coupling comprises the magnets generally marked by the beads depicted below:

 ,  , and 

21.     The Apple Infringing Products comprise the portable switching device (here the original charging case and/or wireless charging case, the "first case") and the portable electronic device (here the earbud(s)earphones, the "second case") being configured to selectively couple to each other through a magnetic force.

22.     The Apple Infringing Products comprise both the switching device and the electronic device, each comprising a white or black plastic outer case, as noted in the images above and below.

23.     The Apple Infringing Products comprise the electronic device comprising an electronic circuit that is responsive to the switching device.  For example, when the Airpods or Powerbeats charging case is opened/closed and the earbuds are located inside the case, the Bluetooth communications capability of the earbuds is activated/deactivated, including as noted below:



(lid of case is closed)    (lid of case has been opened)    (lid of case is closed)    (lid of case has been opened)

(lid of case is closed)    (lid of case has been opened)

8

24.     The electronic device of the Apple Infringing Products comprises a first magnet that is fully disposed within the electronic device.  For example, a magnet fully disposed within the electronic device is marked by beads below:

 ,  and 

25.     The electronic device of the Apple Infringing Products comprises at least one element selected from the group consisting of bumps, raised shapes, and combinations thereof. For example:

 ,  , and 

26.     The electronic device of the Apple Infringing Products is configured to correspond to complementary surface elements on the switching device.  For example, the Airpods case and Powerbeats case, and Airpods earbuds and Powerbeats earbuds, are configured to fit together, respectively, when the earbuds are placed into the case.  For example:

 ,  , and



27.     With the Apple Infringing Products, the second case (including as shown below) of the AirPod earbud and Powerbeats earbud are decoupled from the first case of the Airpods case and Powerbeats case, respectively, by overcoming the magnetic force of the complementary magnets located within each case.  Such magnets are already noted above.

28.     The switching device of the Apple Infringing Products is configured to activate, deactivate and/or send into hibernation the portable electronic device.  For example, when the Airpods case or Powerbeats case is closed and an earbud is within the case, it deactivates and/or hibernates the AirPod earbud or Powerbeats earbud located inside the case, including by sending a signal that causes the earbuds to cease or stop Bluetooth communication; and when the Airpods case or Powerbeats case is opened, it activates the Airpods earbuds or Powerbeats earbuds located inside the case, including by sending a signal that causes their Bluetooth communications to commence.

10

29.     The electronic device of the Apple Infringing Products plays or pauses a remote device. For example, the electronic device of the Apple Infringing Product may play or pause a music player on a Bluetooth connected cellular phone (*e.g.*, an iPhone), for example, via actions such as inserting/removing the earbud into/from the ear, and/or by tapping or pressing (as applicable) the earbud.

30.     The switching device of the Apple Infringing Products includes a lid and hinge (noted below with vertical arrows) attaching the lid to the base of the switching device wherein the lid is recessed to correspond to the electronic device (noted below with horizontal arrows). For example:



, and

31.     The switching device of the Apple Infringing Products comprises the first case functioning to protect the second case. For example:



, and

32.     Claim 2 of the '320 patent covers the system of Claim 1 wherein the switching device has a first lens. The Apple Infringing Products comprise the system of claim 1 (see above), wherein the switching device has a lens. For example, on information and belief, the Airpods case and the Powerbeats case each has a lens for its LED light which indicates charge status:



33.     Claim 3 of the '320 patent covers the system of Claim 1 wherein the electronic device has a second lens.  For example, the Apple Infringing Products comprise the system of claim 1 (see above) and, on information and belief, each AirPod earbud and each Powerbeats earbud includes at least one infrared sensor and at least one laser, with each earbud comprising a lens.  For example:



, and

34.     Claim 4 of the '320 patent covers the system of Claim 1 wherein the lid has a second magnet disposed within it.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the lid of the switching device has a plurality of magnets disposed within it. For example (as noted by the below beads on the lids at left),

12



, and

35.     Claim 5 of the '320 patent covers the system of Claim 4 wherein the lid is configured to employ the second magnet to secure the lid in a closed position by magnetically coupling to the first case.  The Apple Infringing Products comprise the system of claim 4 (see above), wherein the lid of the switching device is configured to employ the second magnet to secure the lid in a closed position via magnetic coupling, with such coupling being shown as follows.  For example:



, and

36.     Claim 7 of the '320 patent covers the system of Claim 3 wherein the first case is configured to be nonabrasive to the second lens. The Apple Infringing Products comprise the system of claim 3 (see above), wherein a plastic surface of the Airpods case and of the Powerbeats case is structurally configured with complementary fitting beveled edges and recesses to the earbuds, and it is composed of a material nonabrasive to the above-noted lenses, respectively.

37.     Claim 9 of the '320 patent covers the system of Claim 1 wherein the first magnet is employed in actuating the electronic circuit.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to

13

magnetically couple the earbud to the charging case, which engages electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device. When said circuit is actuated, electrical communications occur, comprising activation of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status transmitted to the phone. An exemplary such magnet is noted below on each respective earbud (complementary magnets are also noted on each charging case):

 ,  , and 

38.     Claim 10 of the '320 patent covers the system of Claim 4 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.  The Apple Infringing Products comprise the system of claim 4 (see above), wherein the second magnet within the lid of the Airpods case is employed to actuate the electronic circuit.  On information and belief, this occurs in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

39.     Claim 11 of the '320 patent covers the system of Claim 1 wherein the electronic device is wireless earplugs.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the electronic device is wireless earbuds (*see* wireless earbuds noted above).

40.     Claim 12 of the '320 patent covers the system of Claim 1 wherein the system further comprises a sensor that can be activated using a magnet.  The Apple Infringing Products comprise

14

the system of claim 1 (see above), wherein, on information and belief,  a sensor, for example a Hall effect sensor in the charging case, battery level sensor, vertical-cavity surface-emitting laser sensor, infrared sensor and/or the Bluetooth sensor (*i.e.*, receiver) each can be activated using a magnet.  Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the charging case is opened and the earbuds are located inside the case, which, on information and belief, also involves the functionality of the Hall effect sensor.  Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case.  Without limitation, a magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

41.     Claim 13 of the '320 patent covers the system of Claim 5 wherein the system further comprises a sensor that can be activated using a magnet.  The Apple Infringing Products comprise the system of claim 5 (see above), wherein, on information and belief, a sensor, for example, each of a Hall effect sensor in the charging case, a battery level sensor, a vertical-cavity surface-emitting laser sensor, an infrared sensor and/or a Bluetooth sensor can be activated using a magnet when the earbuds are located inside the charging case.by a magnetic switch.  Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the charging case is opened, which, on information and belief, also involves the functionality of the Hall effect sensor.  Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case. Without limitation, a magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

42.     Apple has infringed, and continues to infringe, the claims of the '320 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Apple Infringing Products in violation of 35 U.S.C. § 271(a).

43.     Apple has also infringed, and continues to infringe, the claims of the '320 patent, including at least those noted above, by actively inducing others to use, offer for resale, and resell the Apple Infringing Products. Apple's customers who use those devices in accordance with Apple's instructions directly infringe said claims in violation of 35 U.S.C. § 271(a). Apple intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

44.     Apple has had at least constructive notice of the '320 patent since at least its issuance.  Apple will have been on actual notice of the '320 patent since, at the latest, the service of this complaint. By the time of trial, Apple will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '320 patent.

45.     Gwee believes and contends that, at minimum, Apple's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '320 patent since receiving notice of its infringement of the '320 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, consciously and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Apple  has willfully infringed the '320 patent.

46.     The acts of infringement by Apple have caused damage to Gwee, and Gwee is entitled to recover from Apple the damages sustained by Gwee as a result of Apple's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The infringement

of Gwee's exclusive rights under the '320 Patent by Apple has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

COUNT II - INFRINGEMENT OF U.S. PATENT NO. 10,562,077

47.     The application for U.S. Patent No. 10,562,077 (the "'077 patent") was filed on July 2, 2019 .  The patent issued on February 18, 2020.  The '077 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

48.     Claim 1 of the '077 patent covers a system comprising "a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; a first magnet is fully disposed within the electronic device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; the portable switching device is configured to activate, deactivate, or send into hibernation the portable electronic device; the electronic device plays, pauses and/or changes the volume of a remote device; the switching device includes a lid and hinge attaching the lid to the switching device; the lid is recessed to configure to the electronic device; and when coupled, the first case functions to protect the second case."

49.     The Apple Infringing Products comprise a portable switching device coupled to a portable electronic device, for example, the case of the AirPods and the Powerbeats case function as a portable switching device and the AirPod earbud and the Powerbeats earbud are portable

electronic devices.  Said cases and earbuds are coupled to each other, respectively, including at

least magnetically.  For example, when Airpods earbuds and Powerbeats earbuds are placed into

the Airpods case and Powerbeats case, respectively, they securely snap into place magnetically.

Further, if an Airpods case or Powerbeats case is opened and turned upside down, the Airpods

earbuds and Powerbeats earbuds are held into place magnetically and will not fall from the case.

For example:



, and

     50.    On information and belief, such coupling comprises the magnets generally marked

by the beads depicted below:



, and

     51.    The Apple Infringing Products comprise the switching device (here the original

charging case and/or wireless charging case) and the electronic device (here the earbud(s)) being

configured to selectively couple to each other through a magnetic force, as noted in the above

images.

52.     The Apple Infringing Products comprise both the switching device and the electronic device each comprising a white or black plastic outer case, as noted in the images above and below.

53.     The Apple Infringing Products comprise the electronic device comprising an electronic circuit that is responsive to the switching device.  For example, when the Airpods or Powerbeats charging case is opened/closed and the earbuds are located within the charging case, the Bluetooth communications capability of the earbuds is activated/deactivated, including as noted below:



(lid of case is closed)   (lid of case has been opened)   (lid of case is closed)   (lid of case has been opened)

(lid of case is closed)   (lid of case has been opened)

54.     The electronic device of the Apple Infringing Products comprises a first magnet that is fully disposed within the electronic device.  For example (as marked by the beads below):

 ,  and 

55. The electronic device of the Apple Infringing Products comprises at least one element selected from the group consisting of bumps, raised shapes, and combinations thereof. For example:

 ,  , and 

56. The electronic device of the Apple Infringing Products is configured to correspond to complementary surface elements on the switching device. For example, the Airpods case and Powerbeats case, and Airpods earbuds and Powerbeats earbuds, are configured to fit together, respectively, when the earbuds are placed into the case. For example:

, and

57.    The switching device of the Apple Infringing Products is configured to activate, deactivate and/or send into hibernation the portable electronic device.  For example, when the Airpods case or Powerbeats case is closed and an earbud is within the case, it deactivates and/or hibernates the AirPod earbud or Powerbeats earbud located inside the case, including by sending a signal that causes the earbuds to cease or stop Bluetooth communication; and when the Airpods case or Powerbeats case is opened, it activates the Airpods earbuds or Powerbeats earbuds located inside the case, including by sending a signal that causes their Bluetooth communications to commence.

58.    The electronic device of the Apple Infringing Products plays, pauses and/or changes the volume of a remote device, for example the electronic device of the Apple Infringing Product may play, pause and/or change the volume of a music player on a Bluetooth connected cellular phone (*e.g.*, an iPhone), for example, via actions such as inserting/removing the earbud into/from the ear, and/or by tapping or pressing (as applicable) the earbud.

59.    The switching device of the Apple Infringing Products includes a lid and hinge (noted below with vertical arrows) attaching the lid to the base of the switching device wherein the lid is recessed to correspond to the electronic device (noted below with horizontal arrows).  For example:



, and

60.     The switching device of the Apple Infringing Products comprises the first case functioning to protect the second case. For example:



, and

61.     Claim 2 of the '077 patent covers the system of Claim 1 wherein the switching device has a first lens. The Apple Infringing Products comprise the system of claim 1 (see above), wherein the switching device has a lens. For example, on information and belief, the Airpods case and the Powerbeats case each has a lens for its LED light which indicates charge status:



62.     Claim 3 of the '077 patent covers the system of Claim 1 wherein the electronic device has a second lens.  For example, the Apple Infringing Products comprise the system of claim 1 (see above) and, on information and belief, each AirPod earbud and each Powerbeats

earbud includes at least one infrared sensor and at least one vertical-cavity surface-emitting laser, which each comprise a lens.   For example:

 ,  , and 

63.    Claim 4 of the '077 patent covers the system of Claim 1 wherein the lid has a second magnet disposed within it.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the lid of the switching device has a plurality of magnets disposed within it. For example (as noted by the below beads at left),

 ,  , and 

64.    Claim 5 of the '077 patent covers the system of Claim 4 wherein the lid is configured to employ the second magnet to secure the lid in a closed position.  The Apple Infringing Products comprise the system of claim 4 (see above), wherein the lid of the switching device is configured to employ the second magnet to secure the lid in a closed position. For example:

23

 ,  , and 

65.     Claim 7 of the '077 patent covers the system of Claim 3 wherein the first case is configured to be nonabrasive to the second lens. The Apple Infringing Products comprise the system of claim 3 (see above), wherein a plastic surface of the Airpods case and of the Powerbeats case is structurally configured with complementary fitting beveled edges and recesses to the earbuds, and it is composed of a material nonabrasive to the above-noted lenses, respectively.

66.     Claim 9 of the '077 patent covers the system of Claim 1 wherein the first magnet is employed in actuating the electronic circuit.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages an electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device.   When said circuit is actuated, electrical communications occur, comprising the switching on of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status transmitted to the phone.  An exemplary of such magnet is noted below on each respective earbud (complementary magnets are also noted on each charging case):

 ,  , and 

67.     Claim 10 of the '077 patent covers the system of Claim 4 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.  The Apple Infringing Products comprise the system of claim 4 (see above), wherein the second magnet within the lid of the Airpods case is employed to actuate the electronic circuit.  On information and belief, this occurs in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

68.     Claim 11 of the '077 patent covers the system of Claim 1 wherein the electronic device is wireless earplugs.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the electronic device is wireless earbuds (*see* wireless earbuds noted above).

69.     Claim 12 of the '077 patent covers the system of Claim 1 wherein the system further comprises a sensor that can be activated using a magnet.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein, on information and belief, a sensor, for example a Hall effect sensor in the charging case, a battery level sensor, a vertical-cavity surface-emitting laser sensor, an infrared sensor and/or a Bluetooth sensor (*i.e.*, receiver) each can be activated using a magnet.  Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the case is opened and the earbuds are located within the charging case, which, on information and belief, also involves the functionality of the Hall effect sensor.   Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case.  Without limitation, a magnet disposed within each earbud is used to magnetically couple the earbud to the charging

25

case, which engages an electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

70.     Claim 13 of the '077 patent covers the system of Claim 5 wherein the system further comprises a sensor that can be activated using a magnet.  The Apple Infringing Products comprise the system of claim 5 (see above), wherein, on information and belief, a sensor, for example a Hall effect sensor in the charging case, a battery level sensor, a vertical-cavity surface-emitting laser sensor, an infrared sensor and/or a Bluetooth sensor each can be activated using a magnet. Bluetooth sensors, infrared sensors and VCSEL sensors in the earbuds are activated when the case is opened while the earbuds are within the charging case, which, on information and belief, also involves the functionality of the Hall effect sensor.  Further, a battery level sensor is activated when an earbud is in electrical contact with the charging case.  Without limitation, a magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages an electrical contact of the conducting lead of the earbud with the conducting lead of the charging case, thus actuating a battery level sensor.

71.     Apple has infringed, and continues to infringe, the claims of the '077 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Apple Infringing Products in violation of 35 U.S.C. § 271(a).

72.     Apple has also infringed, and continues to infringe, the claims of the '077 patent, including at least those noted above, by actively inducing others to use, offer for resale, and resell the Apple Infringing Products. Apple's customers who use those devices in accordance with Apple's instructions directly infringe said claims in violation of 35 U.S.C. § 271(a). Apple intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

73.     Apple has had at least constructive notice of the '077 patent since at least its issuance.  Apple will have been on actual notice of the '077 patent since, at the latest, the service of this complaint. By the time of trial, Apple will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '077 patent.

74.     Gwee believes and contends that, at minimum, Apple's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '077 patent since receiving notice of its infringement of the '077 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, conscious and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Apple  has willfully infringed the '077 patent.

75.     The acts of infringement by Apple have caused damage to Gwee, and Gwee is entitled to recover from Apple the damages sustained by Gwee as a result of Apple's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The infringement of Gwee's exclusive rights under the '077 Patent by Defendant has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

**COUNT III - INFRINGEMENT OF U.S. PATENT NO. 10,259,021**

76.     The application for U.S. Patent No. 10,259,021 (the "'021 patent") was filed on December 22, 2017 and the patent issued on April 19, 2019.  The '021 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

77.     Claim 1 of the '021 patent covers a system comprising "a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device

are configured to selectively couple to each other employing magnetic force; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; a first magnet is fully disposed within the electronic device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and when coupled, the first case functions to protect the second case."

78.    The Apple Infringing Products infringe claim 1 of the '021 patent. For example:

79.    The Apple Infringing Products comprise a portable switching device coupled to a portable electronic device, for example, an Airpods case and Powerbeats case each functions as a portable switching device and an AirPod earbud and Powerbeats earbud are portable electronic devices, and they are magnetically coupled together, respectively.  For example, when Airpods earbuds and Powerbeats earbuds are placed into the Airpods case and Powerbeats case, respectively, they securely snap into place magnetically.  Further, if an Airpods case and Powerbeats case are opened and turned upside down, the Airpods earbuds and Powerbeats earbuds, respectively, are held into place magnetically and will not fall from the case.  For example:

, , and 

80.     On information and belief, such coupling comprises at least the magnets generally marked by the beads below:

 ,  , and 

81.     The Apple Infringing Products comprise the switching device (here the original charging case and/or wireless charging case) and the electronic device (here the earbud(s)) being configured to selectively couple to each other employing magnetic force from a magnet disposed at least within the electronic device.   An exemplary of such magnet is noted above at each respective earbud.

82.     The Apple Infringing Products comprise the switching device and the electronic device each comprising a white or black plastic outer case, as noted in the images above and below.

83.     The Apple Infringing Products comprise the electronic device further comprising an electronic circuit that is responsive to the switching device.   For example, when the Airpods or Powerbeats charging case is opened/closed, the Bluetooth communications capability of the earbuds is activated/deactivated when the earbuds are within the case, including as noted below:



(lid of case is closed)   (lid of case has been opened)   (lid of case is closed)   (lid of case has been opened)

(lid of case is closed)   (lid of case has been opened)

84.     The electronic device of the Apple Infringing Products comprises a first magnet that is fully disposed within the electronic device.  For example, the beads below mark magnets so disposed within the electronic device:



, and

85.     The electronic device of the Apple Infringing Products comprises at least one element selected from the group consisting of bumps, raised shapes, and combinations thereof. For example:

 ,  , and 

86.     The electronic device of the Apple Infringing Products is configured to correspond to complementary surface elements on the switching device.  For example, the Airpods case and Powerbeats case and the Airpods earbuds and Powerbeats earbuds, respectively, are configured to fit together when the earbuds are placed into their case.  For example:

 ,  , and 

87.     The switching device of the Apple Infringing Products is configured to activate, deactivate and/or send into hibernation the portable electronic device.  For example, when the Airpods case or Powerbeats case is closed and an earbud is within the case, it deactivates and/or hibernates the AirPod earbud or Powerbeats earbud located inside the case, including by sending a signal that causes the earbuds to cease or stop Bluetooth communication; and when the Airpods case or Powerbeats case is opened, it activates the Airpods earbuds or Powerbeats earbuds located

inside the case, including by sending a signal that causes their Bluetooth communications to commence.

88.     Apple Infringing Products comprise that, when the Airpods earbuds and Powerbeats earbuds are magnetically coupled to the Airpods case and Powerbeats case, respectively, and the Airpods case and Powerbeats case is closed, the first plastic case of the Airpods case and Powerbeats case completely contains and functions to protect the second plastic case of the Airpods earbuds and Powerbeats earbuds, respectively.  For example:



, and

89.     Claim 2 of the '021 patent covers the system of claim 1 wherein the electronic device has a lens.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the electronic device has a lens.  For example, on information and belief, each AirPod earbud and each Powerbeats earbud includes at least one infrared sensor and at least one vertical-cavity surface-emitting laser, with each comprising a lens.   For example:

, and 

90.    Claim 4 of the '021 patent covers the system of claim 1 wherein the switching device has a lens. The Apple Infringing Products comprise the system of claim 1 (see above), wherein the switching device has a lens. For example, on information and belief, the Airpods case and the Powerbeats case each have a lens for their LED light which indicates charge status:



91.    Claim 6 of the '021 patent covers the system of claim 1 wherein the switching device includes a lid and hinge attaching the lid to the switching device wherein the lid is recessed to correspond to the electronic device.  The Apple Infringing Products comprise the system of claim 1 (see above) wherein the switching device includes a lid and hinge (noted below with vertical arrows) attaching the lid to the base of  the switching device wherein the lid is recessed to correspond to the electronic device (noted below with horizontal arrows).  For example:



, and

92.    Claim 7 of the '021 patent covers the system of claim 6 wherein the lid is recessed to configure to the electronic device.  The Apple Infringing Products comprise the system of claim 6 (see above), wherein the lid of the switching device is recessed to configure to the electronic device.  For example:

 ,  , and 

93.     Claim 8 of the '021 patent covers the system of claim 6 wherein the lid has a second magnet disposed within it.  The Apple Infringing Products comprise the system of claim 6 (see above), wherein the lid of the switching device has a plurality of magnets disposed within it. For example (as noted by the below beads at left),

 ,  , and 

94.     Claim 9 of the '021 patent covers the system of claim 8 wherein the lid is configured to employ the second magnet to secure the lid in a closed position.  The Apple Infringing Products comprise the system of claim 8 (see above), wherein the lid of the switching device is configured to employ the second magnet to secure the lid in a closed position.  For example:

 ,  , and 

95.     Claim 10 of the '021 patent covers the system of claim 1 wherein the electronic device is wireless earplugs.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the electronic device is wireless earbuds (see wireless earbuds noted above).

96.     Claim 12 of the '021 patent covers the system of claim 2 wherein a surface of the first case is composed of a material nonabrasive to the lens. The Apple Infringing Products comprise the system of claim 2 (see above), wherein plastic surfaces of each of the Airpods case and Powerbeats case, respectively, is composed of a material nonabrasive to the lenses of the Airpods earbuds and Powerbeats earbuds, respectively.

97.     Claim 14 of the '021 patent covers the system of claim 4 wherein a surface of the first case is composed of a material nonabrasive to the lens. The Apple Infringing Products comprise the system of claim 4 (see above), wherein the plastic surfaces of each of the Airpods case and Powerbeats case, respectively, is composed of a material nonabrasive to the lenses of the Airpods earbuds and Powerbeats earbuds, respectively.

98.     Claim 16 of the '021 patent covers the system of claim 1 wherein the first magnet is employed in actuating the electronic circuit.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device.   When said circuit is actuated, electrical communications occur, comprising the activating of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status

transmitted to the phone.  An exemplary of such magnet is noted below on each respective earbud (complementary magnets are also noted on each charging case):

 ,  , and 

99.     Claim 17 of the '021 patent covers the system of claim 8 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.  The Apple Infringing Products comprise the system of claim 8 (see above), wherein the second magnet within the lid of the Airpods case is employed to actuate the electronic circuit.  On information and belief, this occurs in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

100.    Claim 19 of the '021 patent covers the system of claim 1 wherein the switching device can be employed to perform at least one function selected from the group consisting of: control volume, pause, play, next slide, switch on, switch off, and combinations thereof; to an electronic device.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the Airpods case and the Powerbeats case can be employed to perform at least one function selected from the group consisting of: switch on, switch off, and combinations thereof; with respect to the Airpods earbuds and Powerbeats earbuds, respectively while the earbuds are within the charging case.  For example when the earbuds are selectively coupled to the switching device and the lid of the switching device is opened, the Bluetooth transmitter for the earbuds is switched on. When the earbuds are selectively coupled to the switching device and the lid of the switching device is closed, Bluetooth communications from the earbuds are switched off.

36

101.    Apple has infringed, and continues to infringe, the claims of the '021 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Apple Infringing Products in violation of 35 U.S.C. § 271(a).

102.    Apple has infringed, and continues to infringe, the claims of the '021 patent, including at least those noted above, including by actively inducing others to use, offer for resale, and resell the Apple Infringing Products. Apple's customers who use those devices in accordance with Apple's instructions directly infringe said claims in violation of 35 U.S.C. § 271(a). Apple intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

103.    Apple has had at least constructive notice of the '021 patent since at least its issuance.  Apple will have been on actual notice of the '021 patent since, at the latest, the service of this complaint. By the time of trial, Apple will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '021 patent.

104.    Gwee believes and contends that, at minimum, Apple's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '021 patent since receiving notice of its infringement of the '021 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, conscious and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Apple has willfully infringed the '021 patent.

105.    The acts of infringement by Apple have caused damage to Gwee, and Gwee is entitled to recover from Apple the damages sustained by Gwee as a result of Apple's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The infringement

of Gwee's exclusive rights under the '021 patent by Defendant has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,259,020**

106.    The application for U.S. Patent No. 10,259,020 (the "'020 patent") was filed on December 22, 2017 and the patent issued on April 16, 2019.  The '021 patent claims priority to non-provisional and provisional filings dated as far back as August 5, 2011.

107.    Claim 1 of the '020 patent covers "A system comprising: a portable switching device coupled to a portable electronic device; wherein: the switching device and the electronic device are configured to selectively couple to each other employing magnetic force from a first magnet disposed within the switching device; the switching device comprises a first case; the electronic device comprises a second case and an electronic circuit that is responsive to the switching device; the electronic device comprises at least one element selected from the group consisting of beveled edges, ridges, recessed areas, grooves, slots, indented shapes, bumps, raised shapes, and combinations thereof; configured to correspond to complementary surface elements on the switching device; the portable switching device is configured to activate, deactivate or send into hibernation the portable electronic device; and when coupled, the second case functions to protect the first case."

108.    The Apple Infringing Products infringe claim 1 of the '020 patent. For example:

109.    The Apple Infringing Products are systems comprising a portable switching device coupled to a portable electronic device, for example, an AirPod earbud and Powerbeats earbud function as a portable switching device, an Airpods case and Powerbeats case is a portable electronic device, and they are magnetically coupled together, respectively.  For example, when

Airpods earbuds and Powerbeats earbuds are placed into the Airpods case and Powerbeats case, respectively, they securely snap into place magnetically.   Further, if an Airpods case and Powerbeats case is opened and turned upside down, the Airpods earbuds and Powerbeats earbuds are respectively held into place magnetically and will not fall from the case.  For example:

 ,  , and 

110.    On information and belief, such coupling comprises at least the magnets generally marked by beads below:

 ,  , and 

111.    The Apple Infringing Products comprise the switching device (here the earbud(s)) and the electronic device (here the original charging case and/or wireless charging case) being configured to selectively couple to each other employing magnetic force from a first magnet disposed within the switching device.  An exemplary such magnet is noted with beads on each respective earbud:

 ,  and 

112.    The Apple Infringing Products comprise both the switching device and the electronic device each comprising a white or black plastic outer case, as noted in the images above and below.

113.    The Apple Infringing Products comprise the electronic device comprising an electronic circuit that is responsive to the switching device.  For example, when an AirPod earbud or Powerbeats earbud is coupled to its charging case, the charging case activates, and it determines the battery level of the Airpods earbuds and Powerbeats earbuds, respectively, and the charging case also shows charge status via its  LED light.

114.    The Apple Infringing Products comprise the electronic device comprising at least one element selected from the group consisting of recessed areas, indented shapes, and combinations thereof.  For example:

 ,  , and 

115.     The Apple Infringing Products comprise the electronic device being configured to correspond to complementary surface elements on the switching device.  For example, the Airpods case and Powerbeats case and Airpods earbuds and Powerbeats earbuds are configured to fit together when the applicable earbuds are placed into the case.  For example:

 ,  , and 

116.     Apple Infringing Products comprise the portable switching device being configured to activate the portable electronic device.  For example, when an AirPod earbud or Powerbeats earbud is coupled to its charging case, the case activates, including to charge the earbuds and/or measure/display charge status.

117.     Apple Infringing Products comprise that, when the Airpods earbuds and Powerbeats earbuds are magnetically coupled to the Airpods case and Powerbeats case and the Airpods case and Powerbeats case is closed, the second plastic case of the Airpods charging case and Powerbeats charging case, respectively, completely contains and functions to protect the first plastic case of the Airpods earbuds and Powerbeats earbuds.  For example:

 ,  , and 

41

118.    Claim 2 of the '020 patent covers the system of claim 1 wherein the electronic device has a lens.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the electronic device has a lens.  For example, on information and belief, the Airpods case and Powerbeats case each has a lens for its LED light which indicates charge status.

119.    Claim 4 of the '020 patent covers the system of claim 1 wherein the switching device has a lens. The Apple Infringing Products comprise the system of claim 1 (see above), wherein the switching device has a lens. For example, on information and belief, the AirPod earbud and Powerbeats earbud each have at least one laser and at least one infrared sensor, each comprising a lens.  For example:



, and

120.    Claim 6 of the '020 patent covers the system of claim 1 wherein the electronic device includes a lid and hinge (noted below with vertical arrows) attaching the lid to the electronic device.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the electronic device includes a lid and hinge (noted below with vertical arrows) attaching the lid to the base of the electronic device.  For example:

 ,  , and 

121.    Claim 7 of the '020 patent covers the system of claim 6 wherein the lid is recessed to configure to the switching device.  The Apple Infringing Products comprise the system of claim 6 (see above), wherein the lid of the electronic device is recessed to configure to the switching device.  For example:

 ,  , and 

122.    Claim 8 of the '020 patent covers the system of claim 6 wherein the lid has a second magnet disposed within it.  The Apple Infringing Products comprise the system of claim 6 (see above), wherein the lid of the electronic device has one or more magnets disposed within it. For example (as noted by the below beads at left):

 ,  , and 

123. Claim 9 of the '020 patent covers the system of claim 8 wherein the lid is configured to employ the second magnet to secure the lid in a closed position. The Apple Infringing Products comprise the system of claim 8 (see above), wherein the lid of the electronic device is configured to employ the second magnet to secure the lid in a closed position. For example:

, , and

124. Claim 10 of the '020 patent covers the system of claim 1 wherein the switching device is wireless earplugs. The Apple Infringing Products comprise the system of claim 1 (see above), wherein the switching device is wireless earbuds.

125. Claim 16 of the '020 patent covers the system of claim 1 wherein the first magnet is employed in actuating the electronic circuit. The Apple Infringing Products comprise the system of claim 1 (see above), wherein the first magnet is employed in actuating the electronic circuit, including, on information and belief, wherein the magnet disposed within each earbud is used to magnetically couple the earbud to the charging case, which engages electrical contact of the conducting leads of the earbud with the conducting leads of the charging case, thus, actuating the circuit responsive to the switching device. When said circuit is actuated, electrical communications occur, comprising activation of the earbud communications capability and communication of earbud battery status, including as indicated by the earbuds entering into a connected status with a phone, by LED display on the charging case, and/or by the battery status transmitted to the phone. An exemplary of such magnet is noted below on each respective earbud (complementary magnets are also noted on each charging case):

44

 ,  , and 

126.    Claim 17 of the '020 patent covers the system of claim 8 wherein the second or a third magnet is employed in the lid to actuate the electronic circuit.   The Apple Infringing Products comprise the system of claim 8 (see above), wherein the second or a third magnet is employed in the lid in actuating the electronic circuit, on information and belief, in connection with the Hall effect sensor, which senses a magnetic field associated with or modified by the second magnet.

127.    Claim 18 of the '020 patent covers the system of claim 1 wherein the switching device additionally comprises a laser.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the switching device additionally comprises a vertical-cavity surface-emitting laser.

128.    Claim 19 of the '020 patent covers the system of claim 1 wherein the switching device can be employed to perform at least one function selected from the group consisting of: control volume, pause, play, next slide, switch on, switch off, and combinations thereof; to an electronic device.  The Apple Infringing Products comprise the system of claim 1 (see above), wherein the switching device can be employed to perform at least one function selected from the group consisting of control volume, play and pause, to an electronic device, for example, via actions such as inserting/removing the earbud into/from the ear, and/or by tapping or pressing (as applicable) the earbud.

129.    Apple has infringed, and continues to infringe, the claims of the '020 patent, including at least those noted above, including by making, using, offering for sale, selling and/or importing the Apple Infringing Products in violation of 35 U.S.C. § 271(a).

130.    Apple has infringed, and continues to infringe, the claims of the '020 patent, including at least those noted above, including by actively inducing others to use, offer for resale, and resell the Apple Infringing Products. Apple's customers who use those devices in accordance with Apple's instructions infringe said claims in violation of 35 U.S.C. § 271(a). Apple intentionally instructs its customers to infringe, including by and through its product sales, instructions, manuals and guides.

131.    Apple has had at least constructive notice of the '020 patent since at least its issuance.  Apple will have been on actual notice of the '020 patent since, at the latest, the service of this complaint. By the time of trial, Apple will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of the above-noted claims of the '020 patent.

132.    Gwee believes and contends that, at minimum, Apple's knowing and intentional post-suit continuance of its unjustified, clear, and inexcusable infringement of the '020 patent since receiving notice of its infringement of the '020 patent, is necessarily willful, wanton, malicious, in bad-faith, deliberate, conscious and wrongful, and it constitutes egregious conduct worthy of a finding of willful infringement. Accordingly, since at least receiving notice of this suit, Apple  has willfully infringed the '020 patent.

133.    The acts of infringement by Apple have caused damage to Gwee, and Gwee is entitled to recover from Apple the damages sustained by Gwee as a result of Apple's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty. The infringement

of Gwee's exclusive rights under the '020 Patent by Defendant has damaged and will continue to damage Gwee, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

134.    Gwee demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

135.    Gwee requests entry of judgment in its favor and against Defendant as follows:

a.      A declaration that Defendant has infringed and is infringing the patents-in-suit;

b.      A declaration that Defendant's post-notice infringement of the patents-in-suit has been willful;

c.      An order permanently enjoining Defendant, its respective officers, agents, employees, and those acting in privity with it, from further direct and/or indirect infringement of the patents-in-suit.

d.      An award of damages to Gwee arising out of Defendant's infringement of the patents-in-suit, including enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest, in an amount according to proof;

e.      An award or attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

f.      Granting Gwee its costs and further relief as the Court may deem just and proper.

Dated: July 28, 2020                    Respectfully submitted,

                                        /s/ *John J. Edmonds*
                                        John J. Edmonds
                                        Texas Bar No. 789758
                                        Federal I.D. No. 22110
                                        Stephen F. Schlather
                                        Texas Bar No. 24007993

EDMONDS & SCHLATHER PLLC
2501 Saltus Street
Houston, Texas 77003
Telephone: (713) 364-5291
Facsimile: (713) 222-6651
jedmonds@ip-lit.com
sschlather@ip-lit.com

Barrett H. Reasoner
Texas Bar No. 16641980
Federal ID No. 14922
Mark A. Giugliano
Texas Bar No. 24012702
Federal ID No. 29171
Michael R. Absmeier
Texas Bar No. 24050195
Federal ID No.  608947
GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
breasoner@gibbsbruns.com
mgiugliano@gibbsbruns.com
mabsmeier@gibbsbruns.com

Alistair B. Dawson
Texas Bar No.  Bar No. 05596100
Federal Bar I.D. 12864
adawson@beckredden.com
Michael E. Richardson
Texas Bar No. Bar No. 24002838
Federal Bar I.D. 23630
mrichardson@beckredden.com
BECK REDDEN LLP
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

Butch Boyd
Texas Bar No. 00783694
Federal Bar I.D. 23211
Butch Boyd Law Firm
2905 Sackett Street
Houston, TX 77098
Telephone: (713) 589-8477

48

Facsimile: (713) 589-8563
butchboyd@butchboydlawfirm.com

Attorneys for Plaintiff GUI Global Products, Ltd. d/b/a
Gwee